The BANK OF NEW YORK MELLON f/k/a The Bank of New York, as trustee FOR the CERTIFICATE HOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007–HY6 MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007–HY6

v.

Richard H. BROOKS, Jr., Appellant

No. 1362 EDA 2016

Superior Court of Pennsylvania.

Submitted October 24, 2016
Filed August 28, 2017

---

John R.K. Solt, Bethlehem, for appellant.

Michael LiPuma, Philadelphia, for appellee.

BEFORE: OLSON, SOLANO, and FITZGERALD,* JJ.

OPINION BY FITZGERALD, J.:

Appellant, Richard H. Brooks, Jr., appeals from the order granting summary judgment in favor of Appellee, The Bank of New York Mellon, in this mortgage foreclosure action. Appellant argues that Appellee's servicer failed to respond properly to Appellant's loss mitigation application in violation of 12 C.F.R. § 1024.41(g) ("Regulation X"). We reverse the trial court's order and remand for further proceedings.

---

* Former Justice specially assigned to the Superior Court.

The record provides the following. In March 2007, Appellant obtained a loan from Countrywide Home Loans, Inc. secured by a mortgage in favor of Mortgage Electronic Registration Systems, Inc., as Countrywide's nominee, upon Appellant's residence in Easton, Pennsylvania. In September 2011, Countrywide assigned the mortgage to Appellee. In late 2010, Appellant defaulted upon his mortgage payments.

In March 2012, Appellee instituted the present foreclosure action. On May 13, 2015, while the action remained pending, Appellant, through his counsel, submitted an application for loss mitigation ("Application") to Select Portfolio Servicing, Inc. ("SPS"), the servicer of the loan for Appellee. The Application requested a "short payoff" of the mortgage, which Appellant defined as a "lump sum payoff of the mortgage for less than the outstanding balance of the mortgage." Memorandum In Support Of Appellant's Response To Mot. For Summ. J., at 2. The Application contained multiple documents and additional information relating to Appellant's financial status. Appellant's Response To Mot. For Summ. J., Ex. A.

In an email to SPS on June 24, 2015, Appellant's counsel stated that he had not received a response to the Application and inquired about its status. By email to SPS on July 15, 2015, counsel again stated that he had received no response. On August 4, 2015, still having received no response, counsel telephoned SPS. During the conversation, SPS requested additional documentation to evaluate the Application. On August 12, 2015, counsel forwarded four additional documents by email to SPS relating to Appellant's financial status. *Id.*, Ex. D. Counsel received no further request from SPS for information or documentation.

In a letter dated August 26, 2015, SPS stated: "We determined that we are unable to assist you in this proposed arrangement because the required documentation needed to proceed was not received." *Id.*, Ex. E. On September 2, 2015, counsel responded to SPS as follows: "By email to you on August 12, 2015, I forwarded all additional documents requested by SPS in support of my client's request for a short payoff. I am unaware of any further documentation needed from the borrower to process his request. Please advise immediately." *Id.*, Ex. F. SPS never responded to the email or identified what documentation was missing.

In January 2016, Appellee moved for summary judgment. Appellant responded that Appellee failed to comply with loss mitigation procedures under Regulation X.

On April 1, 2016, the trial court entered summary judgment in favor of Appellee. On April 28, 2016, Appellant timely appealed to this Court.[1]

---

1. On May 3, 2016, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement within twenty-one days, or by May 24, 2016. On May 25, 2016, one day after the deadline, the prothonotary docketed Appellant's Rule 1925 statement.

On April 24, 2017, we remanded this case to the trial court to determine whether Appellant timely filed his Rule 1925 statement. On May 26, 2017, the trial court determined that Appellant failed to timely file his Rule 1925 statement. On June 19, 2017, however, the trial court vacated its May 26, 2017 order and

determined that Appellant timely filed his Rule 1925(b) statement. . .

We concur with the trial court's June 19, 2017 order. The record includes a Form 3817 Certificate of Mailing demonstrating that counsel for Appellant mailed his Rule 1925 statement on May 23, 2017, one day before the deadline. Accordingly, the Rule 1925 statement was timely filed on May 23, 2017. *See* Pa.R.A.P. 1925(b)(1) (filing of Rule 1925 statement "shall be complete on mailing" if appellant obtains Form 3817 Certificate of Mailing from which date of deposit can be

Appellant raises three issues in this appeal:

A. Whether [Appellant] asserted sufficient facts and provided adequate documentation to establish that he submitted a complete loss mitigation application, that [Appellee]'s servicer failed to respond properly, and that [Appellee] was acting in violation of [Regulation X] by moving for summary judgment?

B. Whether [Appellant] was required to utilize the process under Regulation X for appealing a denial of a loss mitigation application when the servicer never sent [Appellant] a notice, as required by 12 C.F.[R.] § 1024.41(c)(1)(ii), stating the servicer's determination of which loss mitigation options, if any, it will offer, and notifying [Appellant] of his right to appeal, the amount of time to appeal, and any requirements for making an appeal?

C. Whether [Appellant] was required to utilize the error resolution procedures of Regulation X prior to raising the servicer's noncompliance with Regulation X in opposition to [Appellee] moving for foreclosure judgment?

Appellant's Brief at 2.

Our standard of review in an appeal from an order granting summary judgment is well settled:

[o]ur review of the trial court's grant of summary judgment is plenary. Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions and affidavits and other materials show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. We must view the record in the light most favorable to the opposing party and resolve all doubts as to the existence of a genuine issue of material fact in favor of the nonmoving party. We will reverse the trial court's grant of summary judgment only upon an abuse of discretion or error of law.

*412 North Front Street Assocs., LP v. Spector Gadon & Rosen, P.C.*, 151 A.3d 646, 660 (Pa. Super. 2016) (citation omitted).

In his first argument, Appellant contends that he submitted a complete loss mitigation application, that Appellee's servicer failed to respond properly, and that Appellee violated Regulation X by seeking summary judgment. We agree with Appellant that Appellee is not entitled to summary judgment on this record.

■ Effective January 10, 2014, pursuant to the federal Dodd–Frank Act, the Consumer Financial Protection Bureau ("CFPB") adopted new regulations relating to mortgage servicing. *See* Pub. L. No. 111–203, 124 Stat. 1376 (sections 1461–1465) (July 21, 2010). The new regulations, entitled "Mortgage Servicing Rules under the Real Estate Settlement Procedures Act (Regulation X)," are codified at 12 C.F.R. §§ 1024.30 *et seq.* "Regulation X prohibits, among other things, a loan servicer from foreclosing on a property in certain circumstances if the borrower has submitted a completed loan modification, or loss mitigation, application." *Miller v. Bank of New York Mellon*, 228 F.Supp.3d 1287, 1290 (M.D.Fla. 2017) (citation omitted).

Regulation X requires servicers[2] to follow specified loss mitigation procedures for

---

verified). Accordingly, we proceed to the merits of this appeal.

**2.** Regulation X implicitly treats servicers as agents of lenders. Similarly, in mortgage fore-

closure proceedings, we have attributed the servicer's acts to the lender. *See HSBC Bank, NA v. Donaghy*, 101 A.3d 129, 135–36 (Pa. Super. 2014) (summary judgment in lender's

a mortgage loan secured by a borrower's principal residence. A "loss mitigation application" is "an oral or written request for a loss mitigation option that is accompanied by any information required by a servicer for a loss mitigation option." 12 C.F.R. § 1024.31. A "loss mitigation option means an alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower." *Id.*

If a borrower submits an application for a loss mitigation option more than forty-five days prior to a foreclosure sale, the servicer is generally required to acknowledge the receipt of the application in writing within five days and notify the borrower whether the application is complete **and, if not, inform the borrower of the additional documents and information needed to complete the application.** *See id.* at § 1024.41(b)(1), (b)(2)(i) and (ii). The notice shall also state a reasonable date by which the borrower should submit the documents and information. *Id.* at § 1024.41(b)(2)(ii). The servicer must exercise reasonable diligence in obtaining documents and information to complete the application. *Id.* at § 1024.41(b)(i).

If a borrower submits all the missing documents and information as stated in the notice, or if no additional information is requested, the application shall be considered facially complete for purposes of subsections 1024.41(d), (e), (f)(2), (g) and (h). *See id.* at § 1024.41(c)(2)(iv). If the servicer later discovers additional information or corrections are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete until the borrower has a reason-

able opportunity to complete the application. *Id.*

For a complete loss mitigation application received more than thirty-seven days before a foreclosure sale, the servicer is required to evaluate the borrower, within thirty days of receiving the complete application, for all loss mitigation options for which the borrower may be eligible in accordance with the investor's eligibility rules. *Id.* at § 1024.41(c)(1)(i). The servicer must provide the borrower with a written decision, including an explanation of the reasons for denying the borrower for any loan modification option offered by an owner or assignee of a mortgage loan. *Id.* at § 1024.41(c)(1)(ii).

If a borrower submits a complete application for a loss mitigation option after the foreclosure process has commenced but more than thirty-seven days before a foreclosure sale, a servicer may not move for a foreclosure judgment or order of sale or conduct a foreclosure sale, until one of the following three conditions has been satisfied: (1) the servicer has sent the borrower a notice that the borrower is not eligible for any loss mitigation option, and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied; (2) the borrower rejects all loss mitigation options offered by the servicer; or (3) the borrower fails to perform under an agreement on a loss mitigation option. *Id.* at § 1024.41(g)(1)–(3).

 Here, construed in the light most favorable to Appellant, the party opposing summary judgment, a genuine issue of material fact exists as to whether Appellee

---

favor reversed due to servicer's failure to comply with notice provisions in mortgage prior to initiating foreclosure action). Accord-

ingly, in the present case, we deem the acts of Appellee's servicer, SPS, to be attributable to Appellee.

violated Regulation X, thus precluding foreclosure on Appellant's property. The record reflects that (1) on May 13, 2015, in support of Appellant's Application for a short payoff, Appellant's attorney sent Appellee's servicer a series of documents and information requested by the servicer;[3] (2) when Appellant's attorney did not hear from the servicer, he first wrote to the servicer and then contacted the servicer by telephone; (3) on August 4, 2015, the servicer requested several more documents during a phone conversation; and (4) on August 12, 2015, Appellant's attorney forwarded all requested documents to the servicer. On August 26, 2015, despite Appellant's diligent efforts to provide all documents and information, the servicer rejected Appellant's Application "because the required documentation needed to proceed was not received." Appellant's Response to Mot. For Summ. J., Ex. E. The servicer failed, however, to identify which documents Appellant neglected to provide.

When an applicant submits an incomplete loss mitigation application, Regulation X requires servicers to notify the applicant which additional documents or information are necessary to complete the application and provide a reasonable deadline for submitting such documents and information. *See* 12 C.F.R. § 1024.41(b)(2)(i) and (ii); *Miller*, 228 F.Supp.3d at 1290. Foreclosure is not permissible unless and until the servicer complies with this procedure. *Id.* In this case,

viewed in the light most favorable to Appellant, the evidence indicates that Appellee's servicer rejected Appellant's Application on the pretext that Appellant failed to provide all necessary documentation without identifying which additional documents and information were necessary to complete the application and the deadline for submitting such documents and information. In other words, Appellant appears to have submitted a complete loss mitigation application,[4] but Appellee's servicer simply brushed it aside in violation of Regulation X. Because the servicer's violation of Regulation X is attributable to Appellee, *see* n.2, *supra*, the trial court erred by granting summary judgment to Appellee.

Appellee argues that Regulation X is inapplicable to this case, because short payoff applications such as Appellant's Application do not fall within the CFPB's official interpretation of a "loss mitigation option." Appellee's Brief at 8. We disagree. The CFPB's "Official Bureau Interpretation" provides:

Loss mitigation options include temporary and long-term relief, including options that allow borrowers who are behind on their mortgage payments to remain in their homes or to leave their homes without a foreclosure, such as, **without limitation**, refinancing, trial or permanent modification, repayment of the amount owed over an extended period of time, forbearance of future payments, short-sale, deed-in-lieu of

---

3. There is no dispute that Appellant timely submitted his Application. *See* 12 C.F.R. § 1041.41(g) (defining timeliness requirements for loss mitigation applications after foreclosure proceedings have begun).

4. Appellee concedes that lenders cannot pursue foreclosure judgments when there has been a complete loss mitigation application that remains pending. Appellee's Brief at 7. Analogously, we have held in at least one instance that a mortgagor's failure to comply

with federal regulations constitutes an affirmative defense to a foreclosure action. *See Fleet Real Estate Funding Corp. v. Smith*, 366 Pa.Super. 116, 530 A.2d 919, 923 (1987) (mortgagor on mortgage insured by Federal Housing Administration could raise as equitable defense to foreclosure mortgagee's failure to comply with forbearance provisions in regulations and handbook issued by the Department of Housing and Urban Development).

foreclosure, and loss mitigation . programs sponsored by a locality, a State, or the Federal government.

Appellee's Reply Brief In Further Support of Mot. For Summ. J., Ex. 1, at 4 (emphasis added). The phrase "without limitation" demonstrates that this list of loss mitigation options is not exclusive. Appellee admits as much in its brief. Appellee's Brief at 8 ("that list does not purport to be exclusive"). Since this list is merely illustrative instead of exhaustive, we conclude that a short payoff is a viable loss mitigation option under Regulation X.

Because we find Appellant's first argument dispositive, we need not address his second and third arguments in this appeal.

Order reversed. Case remanded for further proceedings in accordance with this opinion. Jurisdiction relinquished.

Judge Solano joins.

Judge Olson files a concurring opinion.

## CONCURRING OPINION BY OLSON, J.:

I concur with the learned Majority's decision to vacate the trial court's order granting Appellee's motion for summary judgment. I write separately to address some of the genuine issues of material fact that I believe preclude summary judgment at this stage.

. As the Majority notes, the issue at hand is whether Appellee's servicer, Select Portfolio Servicing, Inc. ("SPS"), failed to respond properly to Appellant's loss mitigation application in violation of 12 C.F.R. § 1024.41(g) ("Regulation X"). Majority Opinion at 668. The Majority identifies certain communications between SPS and John R.K. Solt, Esquire, Appellant's counsel, regarding Appellant's loss mitigation application and documentation that was needed to complete the application process. *Id.* at 669. Based upon these communications, the Majority concludes that a genuine issue of material fact exists as to whether Appellee violated Regulation X, thus precluding foreclosure on Appellant's property. *Id.* at 671–72. Although I agree that the communications between SPS and Attorney Solt referenced by the Majority raise issues of fact regarding the status of Appellant's loss mitigation application, I believe that there are other documents of record that must be addressed so as to provide a clear picture of the factual dispute at hand. Thus, I write separately to address those documents.[1]

A chronology of events, based upon the record, is helpful. Sometime in the spring of 2015, Appellant made a request for a short payoff.[2] On May 6, 2015, SPS sent a letter to Appellant at his home address advising him that a review of his request

1. Appellee's brief discusses in detail some of those documents, including three notices (dated May 6, 2015, July 7, 2015 and July 21, 2015) sent by SPS to Appellant advising him that additional documentation was required to complete his loss mitigation application. Appellee's Brief at 3–4. Appellee also references the letter sent by SPS to Appellant dated August 26, 2015 in which SPS notified Appellant that the application was not approved. *Id.* at 4–5. Appellee argues that these documents support its motion for summary judgment. I find that, to the contrary, these documents, when viewed in the context of the entire record, raise genuine issues of material

. fact. Thus, I believe that it is important to discuss these documents.

2. It is not clear from the record when Appellant filed his request for a short payoff, however, it had to be before May 1, 2015. In a letter dated May 13, 2015 from Attorney Solt to SPS, a reference is made to a May 1 telephone call between Attorney Solt and Colt Nay of SPS during which Mr. Nay requested additional documents from Appellant in support for his request for a short payoff. Defendant's Brief and Affidavit in Opposition to Motion for Summary Judgment, Exhibit A.

could not be completed as all of the requested documentation had not been received. The letter asked that such documents be provided by May 21, 2015. Reply Brief in Support of Plaintiff's Motion for Summary Judgment, Exhibit 3. On May 13, 2015, eight days before the deadline for submitting the documents, Attorney Solt sent a letter via email to SPS identifying the documents that were being transmitted as per SPS' request.[3] Defendant's Brief and Affidavit in Opposition to Motion for Summary Judgment, Exhibit A. On May 15, 2015, two days after Attorney Solt provided documents to SPS, Appellant received a letter from SPS at his home address noting that SPS

> is currently reviewing your request for options to resolve the delinquency on this account. We apologize that this has taken more time than originally anticipated. We remain committed to assisting you during your current financial hardship.
>
> We value you as a customer and appreciate your patience. We expect to provide a response to you within the next fifteen (15) business days.

Reply Brief in Support of Plaintiff's Motion for Summary Judgment, Exhibit 6. Three days later, on May 18, 2015, SPS sent another letter to Appellant at his home address indicating that SPS "received correspondence from [Appellant] or [Appellant's] authorized agent" and noted that the correspondence was forwarded on to "the appropriate department for handling." *Id.* On June 1, 2015, SPS sent a

letter to Appellant at his home address again indicating that SPS received information from Appellant or his authorized agent regarding Appellant's request for assistance and stating that the information will be included in SPS' review of the account. The letter goes on to state, "Please know that you are entitled to a copy of the property valuation report we may order in connection with any applicable account modification review. We will send the valuation report to you upon the completion of the valuation." *Id.*

On June 24, 2015, Attorney Solt sent an email to SPS referencing his email and letter of May 13, 2015 that transmitted the documentation needed to review Appellant's request for a short payoff. Attorney Solt stated that he had not received a response and he inquired as to the status of the matter. Defendant's Brief and Affidavit in Opposition to Motion for Summary Judgment, Exhibit B. Five days later, on June 29, 2015, SPS sent a letter to Appellant which was identical to the letter sent on June 1, 2015. Reply Brief in Support of Plaintiff's Motion for Summary Judgment, Exhibit 6. One week later, SPS sent a letter to Appellant on July 6, 2015 stating that review of the short payoff request could not be completed as SPS did not receive all of the necessary documentation. The letter indicated that the documents needed to be received by SPS by July 21, 2015. Reply Brief in Support of Plaintiff's Motion for Summary Judgment, Exhibit 4. Attorney Solt then sent an email to SPS on July 15, 2015 referencing his earlier

---

**3.** In granting summary judgment, the trial court found that Appellant asserted "in conclusory fashion" that he submitted all of the materials requested by SPS to complete his application and that Appellant failed to "plead in detail the nature of the material that he contends he submitted to [SPS]." Trial Court Opinion, 6/3/16, at 3. This is inaccurate. Attorney Solt's letter to SPS that was emailed

on May 13, 2015 lists all of the documents that were being transmitted. Defendant's Brief and Affidavit in Opposition to Motion for Summary Judgment, Exhibit A. Moreover, Attorney Solt sent another letter to SPS on August 12, 2015 (which will be discussed in greater detail *infra*) that lists the additional documents that were being provided as per SPS' request. *Id.* at Exhibit D.

emails and correspondence of May 13, 2015 and June 24, 2015, again asking for a response and status update. Defendant's Brief and Affidavit in Opposition to Motion for Summary Judgment, Exhibit C. One week later, SPS sent a letter to Appellant on July 21, 2015 stating that information was missing and that the documents must be received by August 5, 2015. Reply Brief in Support of Plaintiff's Motion for Summary Judgment, Exhibit 5.

On August 12, 2015, Attorney Solt sent an email to Larry Gonzales of SPS which references a telephone conversation that Attorney Solt and Mr. Gonzales had on August 4, 2015, one day before the August 5, 2015 due date referenced in SPS' letter of July 21, 2015. Defendant's Brief and Affidavit in Opposition to Motion for Summary Judgment, Exhibit D. According to the August 12 email, Attorney Solt forwarded additional documents in support of Appellant's request for a short payoff as per Mr. Gonzales' request made during the August 4th telephone conversation.[4] *Id.* The email also notes that, during the conversation, Mr. Gonzales stated that he had ordered an appraisal of Appellant's property, however, as of August 12, no appraiser had contacted Attorney Solt to make arrangements. *Id.* The next day, a letter was sent from SPS to Appellant which was identical to the letter it sent on May 15, 2015—again indicating that it was reviewing Appellant's request for options, apolo-

gizing for the delay and indicating that SPS expected to provide a response within 15 business days. Reply Brief in Support of Plaintiff's Motion for Summary Judgment, Exhibit 6.

Nothing further transpired between the parties until SPS sent its letter of August 26, 2015 to Appellant indicating that SPS was "unable to approve [Appellant's] request for assistance involving a Short Payoff ... because the required documentation needed to proceed was not received." *Id.* at Exhibit 2. One week later, Attorney Solt sent an email to SPS referencing SPS' letter of August 26, 2015 and indicating that all requested additional documentation was forwarded to SPS on August 12, 2015. Reply Brief in Support of Plaintiff's Motion for Summary Judgment, Exhibit F. The email also stated that Attorney Solt was unaware of any further documentation needed. It concluded with "Please advise immediately." *Id.*

In both its motion for summary judgment and in its brief filed with this Court, Appellee argues that the various letters asking Appellant for additional documentation and providing due dates for said documents clearly establish that Appellee acted in accordance with Regulation X and in good faith in attempting to address Appellant's loss mitigation application. Thus, Appellee concludes that there is no genuine

---

4. In its July 21, 2015 letter, SPS indicates that various documents are still missing, including federal tax returns, bank statements, profit/loss statements, and a buyer pre-qualification letter indicating the source of funds available for the purchase price of the property. Reply Brief in Support of Plaintiff's Motion for Summary Judgment, Exhibit 5. In the August 12, 2015 email to Mr. Gonzales, Attorney Solt states that he is transmitting copies of Appellant's 2014 federal tax return, a profit and loss statement from Appellant's business, Appellant's most recent bank statement, and a letter from the individual providing the funds

for the short payoff. Defendant's Brief and Affidavit in Opposition to Motion for Summary Judgment, Exhibit D. A simple reading of these two documents reflects that the documents that SPS claimed were still missing were, in fact, provided by counsel for Appellant. Hence, these two documents, in and of themselves, create a genuine issue of material fact as to whether Appellant submitted a complete loss mitigation application as required by Regulation X and whether SPS acted improperly in denying Appellant's application based upon the alleged failure to supply requested documentation.

issue of material fact that would prevent summary judgment in its favor. I disagree. I set forth the detailed chronology of events as established by the documents of record to show that, to the contrary, there are numerous issues of fact regarding the good faith efforts performed by Appellee and its agent, SPS, in dealing with Appellant. First, it appears from the documents that Attorney Solt, acting on behalf of Appellant, was in telephone contact with representatives of SPS, including Mr. Gonzales, and that he attempted to provide the documentation requested.[5] Instead of sending correspondence to Attorney Solt who was clearly acting as counsel for Appellant, SPS sent numerous **form** letters to Appellant at his home address. A number of these letters referenced that SPS had received information regarding Appellant's request, was reviewing that information, apologized for the delay in resolving the matter, and indicated that decisions would be made within 15 days. The documents also indicate that Attorney Solt was forwarding documentation to SPS as per SPS' requests. Moreover, every time Attorney Solt sent an email to SPS inquiring as to the status of Appellant's application, no one from SPS responded to Attorney Solt. Instead, more form letters were sent to Appellant. Viewed in a light most favorable to Appellant as the non-moving party, these documents raise genuine issues of material fact that preclude the entry of summary judgment.

Appellee also argues and the trial court concluded that, after Appellant's application was denied, Appellant failed to comply with the error resolution procedures set forth in 12 C.F.R. § 1024.35 to assert a violation of Regulation X. Trial Court

Opinion, 6/3/16, at 5; Appellee's Brief at 10–11. Appellee argues that the August 26, 2015 letter sent to Appellant advising him that his application was not approved made it clear that "[Appellant] had the right to challenge the decision as error, but he could only do so by sending written correspondence to the specific address listed." Appellee's Brief at 10. Appellee argues that Appellant failed to follow these instructions and, instead, had his attorney send an email on September 2, 2015. *Id.* at 11. Again, in determining whether Appellant adequately raised an objection to the denial of his application, I believe that the entire course of conduct between the parties from May, 2015 until September, 2015 has to be examined. The record establishes that Attorney Solt, as Appellant's legal counsel, had various telephone conversations and email communications with SPS representatives. Instead of communicating with Attorney Solt, SPS sent form letters to Appellant's address and ignored Attorney Solt's requests for information at each turn.

Genuine issues of material fact exist as to whether Attorney Solt's September 2, 2015 email was sufficient to raise an objection to the denial of Appellant's application and whether SPS was relieved of any duties to respond to Attorney Solt's September 2, 2015 email.

Moreover, I am not persuaded by Appellee's argument that Appellant's failure to send his written objection to the address designated in the August 26, 2015 letter compels the legal conclusion that Appellant improperly challenged SPS' determination and, therefore, SPS (and Appellee) were relieved of any responsibility. Section 1024.35 of Regulation X governs the error

---

5. Clearly, genuine issues of material fact exist as to what SPS representatives said to Attorney Solt during those conversations and whether those conversations lulled Attorney Solt and Appellant into a false sense of security that SPS had the documents needed and was actively working on the matter.

resolution procedures that must be followed if a borrower objects to a servicer's determination regarding the borrower's loss mitigation application. This section provides in relevant part:

> A servicer **shall** comply with the requirements of this section for **any** written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

12 C.F.R. § 1024.35(a) (emphasis added). This section goes on to provide that, except for a few exceptions not applicable in this case, "a servicer **must** respond to a notice of error" by either correcting the error identified by the borrower, or conducting a reasonable investigation and providing the borrower with written notification that includes, among other requirements, a statement that no error occurred and the reason for that determination. 12 C.F.R. § 1024.35(e)(1)(i)(A) and (B) (emphasis added). A servicer is relieved of the obligation to respond to a notice of error in only three instances, *i.e.*, 1) the notice of error is duplicative of a previous notice; 2) the notice of error is overbroad; or, 3) the notice of error is untimely. 12 C.F.R. § 1024.35(g)(1)(i)–(iii).

Appellee is correct that section 1024.35(c) of Regulation X provides that a servicer may establish an address that a borrower must use to submit a notice of error and that SPS provided notice to Appellant in the August 26, 2015 letter

that notices of error were required to be sent to a specific address. However, nothing in section 1024.35 provides that a servicer is relieved of its responsibility of responding to a notice of error if a borrower sends the notice to an address other than the designated address. Instead, Regulation X expressly provides that a servicer is relieved of its obligation of responding to a notice of error only if the notice is duplicative, overbroad or untimely. 12 C.F.R. § (g)(1)(i)–(iii). None of these exceptions are applicable in this case.[6]

When considering the entire record as a whole, it is clear that summary judgment is not warranted and I concur with the learned Majority that the order granting summary judgment must be vacated.

---

**6.** Appellee cites to *Roth v. Citimortgage, Inc.*, 756 F.3d 178 (2d Cir. 2014) and *Berneike v. Citimortgage, Inc.*, 708 F.3d 1141 (10th Cir. 2013) as support for its position that Appellant's failure to send the notice of error to the address designated in SPS' August 26, 2015 letter relieves it of responsibility to respond to said notice. *Roth* and *Berneike* are distin-

guishable from this case as those cases dealt with the requirements for triggering a servicer's obligation to respond to a qualified written request (QWR) under the Real Estate Settlement Procedures Act of 1974 (RESPA), 12 U.S.C.A. §§ 2601–2617. The obligations under RESPA are not applicable to the case *sub judice*.