J-A02021-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| U.S. BANK NATIONAL ASSOCIATION S/B/M TO U.S. BANK NATIONAL ASSOCIATION ND | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : : : | |
| JUDITH L. MCALLISTER AND DEAN F. MCALLISTER | : : : | No. 1064 WDA 2019 |
| APPEAL OF: DEAN F. MCALLISTER | : : | |

Appeal from the Order Entered June 17, 2019
In the Court of Common Pleas of Fayette County Civil Division at No(s):
1076 of 2018 GI

BEFORE: SHOGAN, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                    FILED JUNE 11, 2020

Appellant, Dean F. McAllister, appeals from the order entered on June 17, 2019, granting a motion for summary judgment filed by U.S. Bank National Association, s/b/m to U.S. Bank National Association ND (generally, "the Bank") in a mortgage foreclosure action. We affirm.

We briefly summarize the facts and procedural history of this case as follows. On August 2, 2012, Appellant and Judith L. McAllister executed an $805,000.00 mortgage and promissory note to acquire a residential property in Fayette County, located on Alpine Heights Road in Champion, Pennsylvania. On May 23, 2018, the Bank filed a complaint in mortgage foreclosure against Appellant and Judith L. McAllister, alleging that the parties defaulted under the mortgage and note by failing to make payments on May 1, 2017 and

subsequently thereafter.[1]   On August 1, 2018, Appellant filed an answer and new matter to the complaint.  Relevant to this appeal, Appellant claimed that the Bank "failed to attach any account ledger, account transaction journal or other source document" to its complaint "to enable [Appellant] to determine the veracity of the amounts claimed to be due."  Appellant's Answer and New Matter, 8/1/2018, at 3 ¶6.  Thus, Appellant denied owing a total balance of $760,744.64 and demanded "strict proof thereof[.]"  Id.  The Bank replied to new matter on August 15, 2018.

Subsequently, on September 19, 2018, the Bank filed a motion for summary judgment.  Appellant filed a brief in response to the motion for summary judgment on January 24, 2019.  Relevant to the current appeal, Appellant claimed that his mortgage and note originated with "U.S. Bank National Association ND" and, therefore, "U.S. Bank National Association," as the named plaintiff in the action, lacked standing to file the complaint because it had not established that it was the successor holder of the mortgage and note at issue.  Appellant further challenged the Bank's reliance on an affidavit attached to the motion for summary judgment submitted by Carla R. Wedding, a representative from the Bank, "to demonstrate that [U.S. Bank National

_____

[1] On June 8, 2018, Judith L. McAllister filed an answer to the complaint. Therein, she admitted that she signed the mortgage and note in 2012, but denied personal liability, claiming the residential property was an asset transferred to Appellant in their divorce settlement.  Judith L. McAllister did not respond to the Bank's motion for summary judgment and she is not a party to the current appeal.

Association] is the holder of the [subject] mortgage, without any documentary evidence to support that claim." Appellant's Brief in Response to Summary Judgment, 1/24/2019, at 4. Appellant also claimed that the Bank relied upon the affidavit to resolve the amount due under the mortgage. Id. at 5. Appellant claimed that "the affidavit [was] deficient under [Borough of Nanty-Glo v. Am. Sur. Co. of New York, 163 A. 523 (Pa. 1932)] because [the Bank was] attempting to use testimonial evidence to resolve a material issue of fact." Id. at 4. Appellant also argued that the Bank violated 12 C.F.R. § 1024.1, et seq, ("Regulation X") "by filing this mortgage foreclosure without ever conducting any reasonable evaluation of [Appellant's] good-faith attempts at loss mitigation." Id. at 6. On March 8, 2019, prior to argument on the motion for summary judgment, the Bank requested leave from the trial court to supplement its motion for summary judgment by including additional documentation. The Bank submitted "Exhibit A-2" showing its institutional history since 1997, including acquisition of "U.S. Bank National Association ND" by "U.S. Bank National Association" on May 14, 2013. See Praecipe, 3/8/2019, Exhibit A-2.

The trial court held argument on March 8, 2019. On June 17, 2019, by opinion and order, the trial court granted the Bank's motion for summary judgment. The trial court's order also entered judgment in favor of the Bank for $773,392.22, plus interest. On July 17, 2019, Appellant filed a motion to reconsider, contemporaneously with a notice of appeal. On July 18, 2019, the trial court denied reconsideration, stating it lacked jurisdiction in view of the

filing of the notice of appeal. In a separate order entered on July 18, 2019, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed a Rule 1925(b) statement.[2] On August 27, 2019, the trial court entered an order relying upon its prior decision entered on June 17, 2019, as its rationale for granting summary judgment. On October 2, 2019, the trial court granted Appellant supersedas and a stay of the motion for summary judgment pending appeal.

On appeal, Appellant presents the following issues[3] for our review:

1. Whether, in the course of disposing of the [] [m]otion for [s]ummary [j]udgment, the trial court erred by finding that U.S. Bank[ National Association ("U.S. Bank N.A.")] had standing to commence its action in mortgage foreclosure[?]

2. Whether, in the course of disposing of the [] [m]otion for [s]ummary [j]udgment, the trial court erred by finding that the record supports the contention of [U.S. Bank N.A.] that it holds the mortgage rights of its purported predecessor[?]

3. Whether, in the course of disposing of the [] [m]otion for [s]ummary [j]udgment, the trial court erred by permitting [U.S. Bank N.A.] to resolve disputed issues of material fact by means of an affidavit to award summary judgment[?]

_____

[2] As will be discussed at length below, the date of filing is in dispute.

[3] While Appellant presents five issues in his statement of questions presented section of his appellate brief, issues three and four are identical. See Appellant's Brief at 2-3. Moreover, Appellant's argument section frames the issues differently and in another order. For clarity and ease of discussion, we have reordered Appellant's claims as presented and address inter-related issues when applicable.

4. Whether, in the course of disposing of the [] [m]otion for [s]ummary [j]udgment, the trial court erred by finding that [U.S. Bank N.A.] had met all conditions precedent to filing a complaint in mortgage foreclosure despite its failure to meet its duties in the loan modification/loss mitigation process[?]

Appellant's Brief at 2-3.

Before we address the merits of Appellant's claims, the Bank argues that we should quash this appeal because Appellant filed an untimely Rule 1925(b) statement and, therefore, waived all of his issues on appeal. Bank's Brief at 11.

We have previously stated:

In Commonwealth v. Lord, 719 A.2d 306 (Pa. 1998), our Supreme Court held that "from this date forward, in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived." Lord, 719 A.2d at 309; see also Commonwealth v. Castillo, 888 A.2d 775, 780 (Pa. 2005) (stating any issues not raised in a Rule 1925(b) statement are deemed waived). This Court has held that "[o]ur Supreme Court intended the holding in Lord to operate as a bright-line rule, such that 'failure to comply with the minimal requirements of Pa.R.A.P. 1925(b) will result in automatic waiver of the issues raised.'" Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc., 88 A.3d 222, 224 (Pa. Super. 2014) (en banc) (emphasis in original) (quoting Commonwealth v. Schofield, 888 A.2d 771, 774 (Pa. 2005).

"[I]n determining whether an appellant has waived issues on appeal based on non-compliance with Pa.R.A.P. 1925, it is the trial court's order that triggers an appellant's obligation … therefore, we look first to the language of that order." In re Estate of Boyle, 77 A.3d 674, 676 (Pa. Super. 2013).

U.S. Bank, N.A. for Certificateholders of LXS 2007-7N Tr. Fund v. Hua, 193 A.3d 994, 996–997 (Pa. Super. 2018).

Upon review of the certified record, we note the following. On July 18, 2019, the trial court filed an order directing Appellant to file a Rule 1925(b) statement. The order specifies that Appellant "shall file [his Rule 1925(b) statement] of record in the trial court and serve the judge within 21 days." Rule 1925(b) Order, 7/18/2019. The order further states that "[i]ssues not included in the statement, timely filed and served shall be deemed waived." Id. (emphasis added). Accordingly, Appellant had 21 days from July 18, 2019, or until August 8, 2019, to file a timely Rule 1925(b) statement. Upon review of the certified record, the docket contains two different time-stamped copies of Appellant's Rule 1925(b) statement. One copy is marked received on August 9, 2019; the other copy is time-stamped as filed on August 12, 2019. Facially, both copies were received after they were due on August 8, 2019.

In his reply brief to this Court, Appellant's counsel claims he mailed the Rule 1925(b) statement to the trial court prothonotary, the trial court judge, and the Bank, one day before the August 8, 2019 deadline and faxed the Rule 1925(b) statement on August 8, 2019. To his appellate reply brief, Appellant attached a service transmittal letter dated August 7, 2019 and a facsimile transmittal receipt dated August 8, 2019 to support his contention that he filed his Rule 1925(b) statement in a timely manner.

Regarding timing and service, Pennsylvania Rule of Appellate Procedure 1925(b)(1) provides:

The appellant shall file of record the Statement and concurrently shall serve the judge. Filing of record shall be as provided in Pa.R.A.P. 121(a) and, if mail is used, shall be complete on mailing if the appellant obtains a United States Postal Service Form 3817, Certificate of Mailing, or other similar United States Postal Service form from which the date of deposit can be verified in compliance with the requirements set forth in Pa.R.A.P. 1112(c). Service on the judge shall be at the location specified in the order, and shall be either in person, by mail, or by any other means specified in the order. Service on the parties shall be concurrent with filing and shall be by any means of service specified under Pa.R.A.P. 121(c).

Pa.R.A.P. 1925(b)(1).

Additionally, Pennsylvania Rule of Appellate Procedure 121, as referenced in Rule 1925(b), provides in pertinent part:

(a) Filing. Papers required or permitted to be filed in an appellate court shall be filed with the prothonotary. Filing may be accomplished by mail addressed to the prothonotary, but except as otherwise provided by these rules, filing shall not be timely unless the papers are received by the prothonotary within the time fixed for filing. If an application under these rules requests relief which may be granted by a single judge, a judge in extraordinary circumstances may permit the application and any related papers to be filed with that judge. In that event the judge shall note thereon the date of filing and shall thereafter transmit such papers to the clerk.

\*          \*          \*

(c) Manner of service. Service may be:

(1) by personal service, which includes delivery of the copy to a clerk or other responsible person at the office of the person served, but does not include inter-office mail;

(2) by first class, express, or priority United States Postal Service mail;

(3) by commercial carrier with delivery intended to be at least as expeditious as first class mail if the carrier can verify the date of delivery to it;

> (4) by facsimile or e-mail with the agreement of the party being served as stated in the certificate of service.

Service by mail is complete on mailing.

Pa.R.A.P. 121(a) and (c).

Taken all together, we conclude that Appellant's Rule 1925(b) statement was untimely. Initially, we reject Appellant's assertion that he sent the trial court prothonotary a facsimile on the deadline date, because there is no evidence that the Bank agreed to this type of service as required by Pa.R.A.P. 121(c)(4). Because the trial court's Rule 1925(b) order does not specify another means of service, Appellant was required to file his Rule 1925(b) statement by mail or in person under Pa.R.A.P. 1925(b)(1). There is no dispute that Appellant did not file his Rule 1925(b) in person. Moreover, while Rule 121(c) provides that "[s]ervice by mail is complete on mailing[,]" Rule 1925(b)(1) requires verification of the date the filing was deposited with the postal service. Here, Appellant does not provide postal confirmation of the date he mailed the Rule 1925(b) statement and his attorney's letter of certification sent with his Rule 1925(b) statement is not a proper substitute. Based upon our examination of the certified record in this case and the bright-line rule adopted in Lord, we conclude that while quashal is not warranted as the Bank suggests, Appellant's untimely Rule 1925(b) statement compels waiver of all issues presented on appeal.

Assuming arguendo Appellant had not waived all of the issues presented on appeal, we conclude that Appellant's claims otherwise lack merit for the

reasons that follow. Because Appellant's first three contentions, as set forth above, are inter-related, we will first examine them together. Appellant asserts that the trial court erred by not determining whether the Bank had standing to initiate foreclosure proceedings. More specifically, Appellant contends the Bank confusingly pled in its complaint that it was both the original mortgagee and the successor to the mortgage by merger. Appellant's Brief at 8. As such, Appellant argues, "[U.S. Bank N.A.] and the [original m]ortgagee are not the same entity, and the mere fact that [U.S. Bank N.A.] shares a similar name with the [m]ortgagee does not mean that it shares its identity." Id. Accordingly, Appellant maintains, "[t]he Bank failed to plead any assignment or right of succession[.]" Id. at 10. Next, Appellant claims "the Bank could have incorporated an assignment of the mortgage by reference, [but] it did not do that." Id. at 14. Finally, in his third inter-related claim, Appellant argues that the trial court erred by relying on an affidavit from Carla R. Wedding, described as "an officer" of the Bank, to resolve the issue of standing, as well as the amount due under the mortgage, in violation of the rule announced in Nanty-Glo. Id. at 14-20. Appellant contends that the trial court erroneously relied upon the affidavit despite Appellant's specific denial of the Bank's allegations of delinquency and payment default under the note and mortgage. Id. at 17.

> We adhere to the following standards:
>
> We review an order granting summary judgment for an abuse of discretion. Our scope of review is plenary, and we view the record

in the light most favorable to the nonmoving party. A party bearing the burden of proof at trial is entitled to summary judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report. In response to a summary judgment motion, the nonmoving party cannot rest upon the pleadings, but rather must set forth specific facts demonstrating a genuine issue of material fact.

The holder of a mortgage has the right, upon default, to bring a foreclosure action. The holder of a mortgage is entitled to summary judgment if the mortgagor admits that the mortgage is in default, the mortgagor has failed to pay on the obligation, and the recorded mortgage is in the specified amount.

Bank of America, N.A. v. Gibson, 102 A.3d 462, 464–465 (Pa. Super. 2014)

(internal citations, quotations, and brackets omitted).

The rule, established in Nanty-Glo, governing the use of oral testimony to support a motion for summary judgment provides:

However clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of the [fact-finder] to decide, under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence…. The credibility of these witnesses, without whose testimony plaintiff could not have recovered, was for the [fact-finder], and plaintiff's motion for binding instructions should not have been granted.

Nanty–Glo, 163 A. at 524 (internal citations omitted).

Initially, it must be determined whether the plaintiff has alleged facts sufficient to establish a prima facie case. If so, the second step is to determine whether there is any discrepancy as to any facts material to the case. Finally, it must be determined whether, in granting summary judgment, the trial court has usurped improperly the role of the [fact-finder] by resolving any material issues of fact.

It is only when the third stage is reached that Nanty–Glo comes into play.

Dudley v. USX Corp., 606 A.2d 916, 920 (Pa. Super. 1992), appeal denied, 616 A.2d 985 (Pa. 1992).

The function of the summary judgment proceedings is to avoid a useless trial but is not, and cannot, be used to provide for trial by affidavits or trial by depositions. That trial by testimonial affidavit is prohibited cannot be emphasized too strongly. In considering a motion for summary judgment, the lower court must examine the whole record, including the pleadings, any depositions, any answers to interrogatories, admissions of record, if any, and any affidavits filed by the parties. From this thorough examination the lower court will determine the question of whether there is a genuine issue as to any material fact. On this critical question, the party who brought the motion has the burden of proving that no genuine issue of fact exists. All doubts as to the existence of a genuine issue of a material fact are to be resolved against the granting of summary judgment.

In determining the existence or non-existence of a genuine issue of a material fact, courts are bound to adhere to the rule of [Nanty–Glo] which holds that a court may not summarily enter a judgment where the evidence depends upon oral testimony.

> However clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of the [fact-finder] to decide, under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if [it] should deem the verdict contrary to the weight of the evidence.

Penn Center House, Inc. v. Hoffman, 553 A.2d 900, 902–903 (Pa. 1989). The Nanty–Glo rule means "the party moving for summary judgment may not rely solely upon its own testimonial affidavits or depositions, or those of its witnesses, to establish the non-existence of genuine issues of material fact." Dudley, supra at 918. "Testimonial affidavits of the moving party or his witnesses, not documentary, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the [factfinder]." Penn Center House, 553 A.2d at 903.

If, however, the moving party supports its motion for summary judgment with admissions by the opposing party, Nanty–Glo does not bar entry of summary judgment.

DeArmitt v. New York Life Ins. Co., 73 A.3d 578, 594–595 (Pa. Super. 2013).

> We have further stated,
>
> Nanty–Glo prohibits entry of summary judgment based on the moving party's oral testimony. An exception to this rule exists, however, where the moving party supports the motion by using admissions of the opposing party. Admissions include facts admitted in pleadings.
>
> *          *          *
>
> General denials constitute admissions where [] specific denials are required. Furthermore, in mortgage foreclosure actions, general denials by mortgagors that they are without information sufficient to form a belief as to the truth of averments as to the principal and interest owing on the mortgage must be considered an admission of those facts.   [Finally, even if an] affidavit constitutes hearsay, [when] the referenced loan history documents are records of regularly conducted activity, or business records, [such evidence] would be admissible at trial with proper foundation.

Gibson, 102 A.3d at 466–467 (internal citations and quotations omitted).

Here, the trial court determined that Appellant generally denied the alleged default and the total amount owed.  Trial Court Opinion, 6/17/2019, at 3. The trial court recognized that Appellant's general denials constituted admissions as to default and the principal and interest owed because, beside the mortgagee bank, Appellant and Judith L. McAllister as the mortgagors "are the only parties who would have sufficient knowledge on which to base a specific denial."  Id. at 6, citing New York Guardian Mortgage Corp. v. Dietzel, 524 A.2d 951, 952 (Pa. Super. 1987).  Accordingly, the trial court considered Appellant's general denials concerning default and amounts due

under the mortgage as admissions and "conclude[d] that [Appellant was] indeed in default of [his] obligations under [the] mortgage." Id. The trial court determined that Appellant's deemed admissions left no issues of material fact to decide, that the affidavit at issue was documentary and not testimonial, and the Bank provided additional evidence that traced its institutional history to establish standing. For all of the foregoing reasons, we discern no abuse of discretion in granting the Bank's motion for summary judgment and conclude there is no merit to Appellant's first three issues.

Finally, Appellant contends:

> The trial court erred once more by entering summary judgment in favor of the Bank, despite its failure to meet a condition precedent imposed under federal law. Under 12 C.F.R. §1024.1, et seq. ("Regulation X"), borrowers are accorded certain rights prior to the commencement of any mortgage foreclosure action. Here, the Bank violated Regulation X by filing its Complaint without conducting any reasonable evaluation of [Appellant's] numerous good-faith attempts at loss mitigation. "Regulation X prohibits, among other things, a loan servicer from foreclosing on a property in certain circumstances if the borrower has submitted a completed loan modification."

Appellant's Brief at 20, citing Bank of New York Mellon v. Brooks, 169 A.3d 667, 670 (Pa. Super. 2017).

In Brooks, we previously determined:

> Effective January 10, 2014, pursuant to the federal Dodd–Frank Act, the Consumer Financial Protection Bureau ("CFPB") adopted new regulations relating to mortgage servicing. See Pub. L. No. 111–203, 124 Stat. 1376 (sections 1461–1465) (July 21, 2010). The new regulations, entitled "Mortgage Servicing Rules under the

Real Estate Settlement Procedures Act (Regulation X)," are codified at 12 C.F.R. §§ 1024.30 et seq. "Regulation X prohibits, among other things, a loan servicer from foreclosing on a property in certain circumstances if the borrower has submitted a completed loan modification, or loss mitigation, application." Miller v. Bank of New York Mellon, 228 F.Supp.3d 1287, 1290 (M.D.Fla. 2017) (citation omitted).

Regulation X requires servicers to follow specified loss mitigation procedures for a mortgage loan secured by a borrower's principal residence. A "loss mitigation application" is "an oral or written request for a loss mitigation option that is accompanied by any information required by a servicer for a loss mitigation option." 12 C.F.R. § 1024.31. A "loss mitigation option means an alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower." Id.

If a borrower submits an application for a loss mitigation option more than forty-five days prior to a foreclosure sale, the servicer is generally required to acknowledge the receipt of the application in writing within five days and notify the borrower whether the application is complete and, if not, inform the borrower of the additional documents and information needed to complete the application. See id. at § 1024.41(b)(1), (b)(2)(i) and (ii). The notice shall also state a reasonable date by which the borrower should submit the documents and information. Id. at § 1024.41(b)(2)(ii). The servicer must exercise reasonable diligence in obtaining documents and information to complete the application. Id. at § 1024.41(b)(i).

If a borrower submits all the missing documents and information as stated in the notice, or if no additional information is requested, the application shall be considered facially complete for purposes of subsections 1024.41(d), (e), (f)(2), (g) and (h). See id. at § 1024.41(c)(2)(iv). If the servicer later discovers additional information or corrections are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete until the borrower has a reasonable opportunity to complete the application. Id.

For a complete loss mitigation application received more than thirty-seven days before a foreclosure sale, the servicer is required to evaluate the borrower, within thirty days of receiving the complete application, for all loss mitigation options for which

the borrower may be eligible in accordance with the investor's eligibility rules. Id. at § 1024.41(c)(1)(i). The servicer must provide the borrower with a written decision, including an explanation of the reasons for denying the borrower for any loan modification option offered by an owner or assignee of a mortgage loan. Id. at § 1024.41(c)(1)(ii).[4]

\* \* \*

Brooks, 169 A.3d at 670-671 (Pa. Super. 2017) (footnote omitted; emphasis added).

In this case, in his response to the Bank's motion for summary judgment, Appellant stated, as follows:

The [Bank's] unexplainable refusal to participate in a meaningful loss mitigation dialogue has not been the result of any failure on the part of [Appellant] to diligently submit completed requests for mortgage assistance ("RMA") or to supply any documents or information. In fact, [Appellant] submitted full RMA forms with all accompanying documentation on December 31, 2016 and July 31, 2017. On December 28, 2017, after the [Bank] had refused to provide any form of loss mitigation, mortgage modification or other relief, [Appellant] appealed the [Bank's] determination.

The result of that appeal process was not simpl[y] disappointing, it was nothing short of irrational. In its Loss Mitigation Review

_____

[4] More specifically, Section 1024.41(c)(1)(ii) requires the Bank to:

Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

12 C.F.R. § 1024.41(c)(1)(ii) (emphasis added).

> Determination, the [Bank] determined that [Appellant's] income had been insufficient to support a modified payment amount – so, instead, the [Bank] offered no modification but suggested that [Appellant] remit "trial payments" based on the unmodified and far greater alleged loan balance.

Appellant's Brief in Response to Summary Judgment, 1/24/2019, at 6-7 (citation and emphasis omitted).

Here, Appellant admits that he filed the necessary loss mitigation paperwork with the Bank on December 31, 2016 and July 31, 2017. He does not allege that the Bank required additional information and, in fact, concedes that the applications were complete. Moreover, Appellant acknowledges that the Bank notified him that he was ineligible for mortgage modification or reduced payments based upon his annual income. Appellant claims, nevertheless, the Bank "refused to provide any form of loss mitigation, mortgage modification or other relief[.]" Id. at 7. However, pursuant to 12 C.F.R. § 1024.41(c)(1)(ii), the Bank was only required to provide Appellant "with a written decision, including an explanation of the reasons for denying the borrower for any loan modification option" and about "loss mitigation options, if any" available to Appellant. Upon review of the record, the Bank complied with those requirements. Therefore, the fact that the Bank did not offer Appellant any mitigation loss relief is wholly irrelevant herein, but we would otherwise find the Bank's denial of loss mitigation options was legally permissible under Section 1024.41(c)(1)(ii). Accordingly, we conclude that

the Bank followed the proper procedure for loss mitigation under Regulation

X.  Appellant's final claim lacks merit.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/11/2020